Peter B. Langbord, Esq.
**FOLEY & MANSFIELD, PLLP**
300 South Grand Avenue, Suite 2800
Los Angeles, California 90071
Telephone: (213) 283-2100
**Attorneys for Defendant, Viad Corp**

| | |
|---|---|
| **IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)** | ) ) ) |
| | ) |
| **THERESA M. SCHOTT, individually and as Personal Representative for the Estate of ROBERT THOMAS SCHOTT** | ) ) ) |
| **Plaintiffs,** | ) ) ) |
| **vs.** | ) ) |
| **CLA-VAL CO., et al.,** | ) ) ) |
| **Defendants.** | ) ) ) |

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
PENNSYLVANIA

**EDPA Case No. 2:09-CV-63308-ER**

Transferor Court: United States District Court for
the Central District of California

---

## DEFENDANT VIAD CORP'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

---

Defendant Viad Corp ("Viad"), by its undersigned counsel, moves for summary judgment before the United States District Court, Eastern District of Pennsylvania, MDL 875.

In support of this motion, Viad relies on the attached Memorandum of Points and Authorities, Declaration of Peter B. Langbord and exhibits attached hereto.

DATED: August 13, 2010

**FOLEY & MANSFIELD, PLLP**

Peter B. Langbord
Attorney for Defendant
**Viad Corp**

<u>**TABLE OF CONTENTS**</u>                                                      <u>**PAGE**</u>

TABLE OF AUTHORITIES ............................................................................i,ii,iii,iv,v

I.    **STATEMENT OF FACTS** ......................................................................... 2

    A.    Factual Background Regarding Product Identification And Exposure.............................. 2

        1.    The Complaint ................................................................................... 2

        2.    Plaintiff's Discovery Responses.......................................................... 2

        3.    Depositions ........................................................................................ 3

            a.    Decedent Robert Schott..................................................... 3

            b.    Richard Withers ................................................................. 5

            c.    Robert E. Ross................................................................... 6

            d.    Larry Clevenger ................................................................ 6

        4.    Ship History....................................................................................... 6

            a.    USS Franklin D. Roosevelt (CVB-42)............................... 6

            b.    USS Oriskany (CV-34) ...................................................... 7

            c.    USS Samuel N. Moore (DD-747) ...................................... 7

            d.    USS Caliente (AO-53) ....................................................... 7

    B.    Factual Background Regarding Corporate History/Time Of GRC And Viad – Lack Of

        Successor Relationship. ............................................................................... 7

        1.    GRC Background/Dissolution ........................................................... 7

        2.    1965 Tax Return for Armour-DE........................................................ 8

II.   **CHOICE OF LAW** ................................................................................... 10

III.  **LEGAL ARGUMENT** ............................................................................ 11

    A.    Summary Judgment Is Appropriate Because Plaintiff Cannot Establish That Decedent

        Breathed Respirable Asbestos Fibers Released From A GRC Product...................15

        1.    Plaintiff Cannot Meet Either Prong Of The *Rutherford* Test............................13

    B.    Summary Judgment Is Appropriate Because Plaintiff Cannot Establish That GRC Placed

        An Asbestos-Containing Product Into The Stream Of Commerce.........................15

1.  Summary Judgment Is Proper Because GRC Was Not In The Chain Of Distribution Of
    Products Manufactured And Supplied By Others. ........................................................ 15

2.  This Case Is Factually Analogous To *Taylor*. ............................................................ 17

**IV.    VIAD IS NOT THE SUCCESSOR TO GRC** ........................................................... 18

A.  Applicable Law – Corporate Successor Liability. ............................................................. 18

B.  A GRC/BLH-PA De Facto Merger Did Not Occur. .......................................................... 18

C.  The 1965 Armour DE/BLH-PA Statutory Merger Transformed Liabilities To BLH-DE,
    Cutting Off Any Potential Liability To Viad. .................................................................... 19

**CASES**           **PAGE**

*Aguilar v. Atlantic Richfield Co.* (2001)

    25 Cal.4th 826, 849 .......................................................................................... 11

*Andrews v. Foster Wheeler LLC* (2006)

    138 Cal.App.4th 96, 99-100 ..................................................................... 11,12

*Bay Summit Community Assn. v. Shell Oil Co.* (1996)

    51 Cal.App.4th 762, 776] ............................................................................. 16

*Berg Chilling Sys., Inc. v. Hull Corp.,*

    435 F.3d 455, 468-69 (3d Cir. 2006) ......................................................... 18

*Bockrath v. Aldrich Chemical Co.* (1999)

    21 Cal.4th 71, 79 .......................................................................................... 12

*Cadlo v. Owens-Illinois* (2004)

    124 Cal.App.4th 513 .................................................................................... 12

*Celotex Corp. v. Catrett* (1986)

    477 US 317, 325. ......................................................................................... 11

*Continental Ins. Co. v. Schneider, Inc.,*

    810 A.2d 127, 135 (Pa. Sup. Ct. 2002) .................................................... 18

*Drug, Inc. v. Hunt*, 3

    5 Del. 399, 168 A. 87, 96 (Del. 1933). ..................................................... 18

*Dumin v Owens-Corning Fiberglass Corp.* (1944)

    28 Cal.App.4th 650, 658 ......................................................................... 12,13

*East River Steamship Corp., v. Transamerica Delaval, Inc.* (1986)

    106 S.Ct. 2295, 863-864 ............................................................................. 10

*Elmer v. Tenneco Resins, Inc.,* 698 F.Supp. 535, 540 (D. Del. 1988) ....................... 17

*Erie Railroad Co. v. Tompkins* (1938)

    304 U.S. 64, 78 ........................................................................................... 10

*Forrest v. Beliott Corp.,*

    278 F. Supp. 2d 471, 477 (E.D. Pa. 2003) ................................................ 18

*Frontier Oil Corporation v. RLI Insurance Company* (2007)

  153 Cal.App.4th 1436, 1465 ................................................................... 10

*Hunter v. Pacific Mechanical Corp.* (199)

  37 Cal.App.4th 1282, 1289 ..................................................................... 12

*Krantz v. BT Visual Images, LLC* (2001)

  89 Cal.App.4th 164, 170-71 .................................................................... 11

*Lineaweaver v. Plant Insulation Co.* (1995)

  31 Cal.App.4th 1409, 1415-1416.............................................................. 12

*McGonnell v. Kaiser Gypsum* (2002)

  98 Cal.App.4th 1098, 1103 ................................................................. 12,14

*Ortiz v. South Bend Lathe* (1975)

  46 Cal.App.3d 842, 846 ......................................................................... 18

*Payne v. Viad Corporation,*

  190 P.3d 102, 108 (Wash. Ct. App. 2008).................................................. 19

*Peterson v. Superior Court* (1995)

  10 Cal.4th 1185 .................................................................................... 17

*Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308 (3rd Cir. 1985),

  cert denied, 474 U.S. 980 (1985);....................................................... 17,18

*Powell v. Standard Brands Paint Co.* (1985)

  166 Cal.App.3d 357, 363 ....................................................................... 12

*Rutherford v. Owens-Illinois* (1997)

  16 Cal.4th 953, 958 ..................................................................... 10,11,12,14

*Schwartz v. McGraw-Edison Co.* (1971)

  14 Cal.App.3d 767, 780 ......................................................................... 17

*Singleton Stone v. Amquip Corp.,*

  Civ. No. 98-cv-4691, 1000 WL 1448817 at 3 (E.D. Pa. sep. 29, 2000). ................... 10

*Springmeyer v. Ford Motor Co.* (1998)

  60 Cal.App.4th 1541, 1554 ..................................................................... 16

*Taylor v. Elliott Turbomachinery Co.* (2009)

    171 Cal.App.4[th] 564, 564 ................................................................. 14,15,16,17

*Union Bank v. Superior Court* (1995)

    31 Cal.App.4[th] 573 ...................................................................................... 11

## **Rules**

Fed. Civ. Proc. Rule 56 ...................................................................................... 11

Fed. Civ. Proc. Rule 56(c)(2) ............................................................................. 11

## **Other Authorities**

*Witkin, Summary of California Law* (9th Edition) Torts section 1273 ......................................... 18

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | CIVIL ACTION NO. MDL 875 |
| THERESA M. SCHOTT, Individually and as Personal Representative for the Estate of ROBERT THOMAS SCHOTT | EDPA Case No. 2:09-CV-63308-ER Chief U.S. Magistrate Judge Thomas J. Rueter |
| Plaintiff, | |
| vs. | |
| CLA-VAL CO., et al., | |
| Defendants. | |

## DEFENDANT VIAD CORP'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Viad Corp (hereinafter "Viad"), by and through counsel and pursuant to Federal Rule of Civil Procedure 56, submits this Memorandum of Law and corresponding documentation in support of its Motion for Summary Judgment.

Plaintiff Theresa M. Schott commenced this product liability action against Viad alleging that it is the corporate successor to the Griscom-Russell Company ("GRC"), a defunct company that allegedly sold evaporators and fuel oil heaters to the U.S. Navy for use on naval vessels. Plaintiff seeks damages allegedly caused by Robert T. Schott's ("Decedent") exposure to asbestos-containing products while serving in the Navy aboard the USS Franklin D. Roosevelt ("USS Roosevelt"), USS Oriskany, USS Samuel N. Moore ("USS Moore"), and USS Caliente.

Viad moves for summary judgment with respect to plaintiff's Complaint, as Viad is not the legal corporate successor to GRC. Further, there is no evidence that Decedent's alleged exposure to any GRC product was a substantial contributing factor to his alleged asbestos disease. As set forth below, there are no genuine issues of material fact, and Viad is therefore entitled to judgment as a matter of law.

1

I.      **STATEMENT OF FACTS**

    A.      **Factual Background Regarding Product Identification And Exposure**

    1.      **The Complaint**

Plaintiff claims that Decedent was exposed to asbestos from 1947 to 1970, when he served as a fireman and machinist mate in the Navy aboard the USS Roosevelt, USS Oriskany, USS Moore, and USS Caliente. *See* Exhibit "A" to plaintiff's Complaint. The Complaint generally alleges that Decedent was exposed to asbestos from his work with and around products manufactured, supplied, or sold by defendants named in the Complaint. *See* generally Complaint. Viad is one of several named defendants in this matter, and is being sued as an alleged successor to GRC. GRC is a defunct company that manufactured evaporators and fuel oil heaters used on some Navy vessels. The Complaint makes no specific allegations as to when or where Decedent was exposed to a GRC product; nor are there any allegations regarding exposure to any specific GRC product. *See* generally Complaint.

    2.      **Plaintiff's Discovery Responses**

During the discovery period, Viad propounded Special Interrogatories, Request for Production of Documents, and Request for Admissions to determine what evidence, if any, plaintiff has regarding Decedent's alleged exposure to asbestos-containing products manufactured by GRC. Plaintiff provided no evidence in her responses to support her claims against Viad.

Plaintiff's responses included no detail about any particular GRC product at issue, and are silent about Decedent's alleged exposures. *See* Plaintiff's Responses to Special Interrogatories, Request for Production of Documents, and Request for Admissions, attached as Exhibits A, B, and C, respectively. Plaintiff did not specify what particular GRC product Decedent worked on or around, or the location, function, or physical description of the GRC product. Plaintiff merely made general statements about Decedent being exposed to asbestos-

containing GRC distilling plants during his service aboard USS Roosevelt, USS Oriskany, USS Moore, and USS Caliente.

Plaintiff's factually devoid responses to Viad's case specific discovery do not provide the missing evidence of Decedent's exposure to asbestos from a product supplied by GRC. Plaintiff failed in her responses to written discovery to disclose any witness, document, or evidence to support her contention that Decedent worked with or around asbestos-containing products manufactured or supplied by GRC.

### 3.   Depositions

#### a.   Decedent Robert Schott

Decedent and his wife initially filed two separate but substantially identical California state court actions, each with different defendants, seeking  damages for Decedent's alleged asbestos-related injuries.  Defendants in this case removed this matter to federal court, and the other action proceeded in California state court (Los Angeles County Superior Court Docket No. BC390952) ("the State Court Case").  Decedent passed away on December 19, 2008, before he could be deposed in this case.  *See* Exhibit D, Death Certificate.  In the State Court Action, Decedent's trial preservation deposition was taken in August 2008 and his discovery deposition was taken in October and November 2008.[1]  Viad was not a defendant in the State Court Case and thus was not present at those depositions.

Decedent served aboard the USS Roosevelt from 1948 to 1954.  *See* Exhibit E, discovery deposition transcript of Robert T. Schott, taken October 9, 2008, 185:12-15.  He served aboard the USS Oriskany from 1954 to 1956. *See* Exhibit E, discovery deposition transcript of Robert T. Schott, taken October 9, 2008, 185:25-186:11.  By the time Decedent boarded the USS Oriskany in 1954, it had already been through several overhauls.  *See* Exhibit F, discovery deposition transcript of Robert T. Schott, taken October 16, 2008, 520:5-11.  Decedent did not work on any

---

[1]By citing to Decedent's and co-workers' testimony, Viad does not intend to waive its objection to the introduction of this testimony at the time of trial.

GRC equipment while aboard the USS Roosevelt or the USS Oriskany. *See* Exhibit I, discovery deposition transcript of Robert T. Schott, taken November 3, 2008, 1499:19-23.

Decedent was transferred to shore duty at the San Diego Recruit Training Center, where he trained newly enlisted recruits from 1956 to 1959. During this time, Decedent did not board any ships and did not perform repair or maintenance to any equipment or machinery. *See* Exhibit E, discovery deposition transcript of Robert T. Schott, taken October 9, 2008, 187:19-188:8.

Decedent served aboard the USS Moore from 1959 to 1966, approximately fifteen years after she was commissioned. *See* Exhibit E, discovery deposition transcript of Robert T. Schott, taken October 9, 2008, 188:15-19, *see also* Exhibit H, discovery deposition transcript of Robert T. Schott, taken October 17, 2008, 636:10-18. Decedent testified that the USS Moore underwent at least four overhauls at Long Beach Naval Shipyard during the time he was aboard her. *See* Exhibit H, discovery deposition transcript of Robert T. Schott, taken October 17, 2008, 636:10-18.

Decedent associated the name Griscom Russell with evaporators, and testified that aboard the USS Moore, he pulled the tube nest from the evaporator "to get the salt off the tubes," removed exterior insulation, and removed and installed gaskets. *See* Exhibit I, discovery deposition transcript of Robert T. Schott, taken November 3, 2008, 1499:19-23; Exhibit G, trial preservation deposition of Robert T. Schott, taken August 29, 2008, 155:20-160:25. He also testified that he was in the engine room when others performed this work. *See* Exhibit G, trial preservation deposition of Robert T. Schott, taken August 29, 2008, 155:20-160:25. Decedent did not perform repair or maintenance to any evaporator before his service aboard the USS Moore. *See* Exhibit I, discovery deposition transcript of Robert T. Schott, taken November 3, 2008, 1499:19-23.

From 1966 to 1969, Decedent again trained recruits at the San Diego Recruit Training Center. During this time, Decedent did not board any ship and did not perform any repair,

maintenance, or overhaul to any equipment or machinery. *See* Exhibit E, discovery deposition transcript of Robert T. Schott, taken October 9, 2008, 189: 9-23.

From 1969 to 1970, Decedent served aboard the USS Caliente. *Id.* at 190:8-11. His duties aboard this vessel were strictly limited to the Planned Maintenance System, wherein he prepared written reports associated with the functioning of this system.[2] *See* Exhibit J, discovery deposition transcript of Robert T. Schott, taken October 22, 2008, 1009: 5-10 and 1010:10-1011:6, and Exhibit K, discovery deposition transcript of Robert T. Schott, taken October 27, 2008, 1026:10-1027:6.

### b.    Richard Withers

Richard Withers ("Mr. Withers"), a Navy shipmate of Decedent, was deposed on March 12, 2010. Mr. Withers served with the Decedent from late 1959 to 1962 aboard the USS Moore. *See* Exhibit L, deposition transcript of Richard Withers, taken March 12, 2010, 25:9-15 and 79:13-14. During this time, Decedent was a petty officer in charge of the engine room, and Mr. Withers and several other men operated the evaporator. *Id.*, 24:20-25:1 and 25:19-26:11. Mr. Withers reported to Decedent. *Id.*, 26:10-11. Mr. Withers testified that on one occasion, over the course of a single weekend, "the whole crew" had to make repairs to the evaporator because it was not functioning properly. *Id.*, 49:16-50:24. The "whole crew" removed the interior tubes from the evaporator, sent them over to a tender ship for testing and repairs, and then reinstalled them. *Id., 51:16-25.* There was one gasket associated with this job, and it was supplied by the tender. *Id.*, 54:6-11. Mr. Withers thought Decedent probably helped with the job. *Id.*, 52:17-53:5. Other than this one time, Mr. Withers could not specifically recall any other work Decedent performed on the evaporator. *Id.*, 59:2-14.

Mr. Withers further testified that during the course of his service on the USS. Moore, he changed gaskets on the evaporator on several occasions. *Id.*, 56:15 - 57:7. He was aware that the ship had been built in 1944 or 1945 -- approximately 15 years before he boarded her -- and

---

[2] Decedent did not perform any repair or maintenance to any evaporator aboard the USS Caliente.

he "[could not] imagine" that the original gaskets, packing, or insulation associated with the evaporator were still on the USS Moore when he boarded her in 1959. *Id.,* 102:19 - 103:10. He did he know who manufactured the replacement gaskets or gasket material used on the evaporator. *Id.,* 101:12-21; 102:19-25.

### c.    Robert E. Ross

Robert E. Ross ("Mr. Ross"), a Navy shipmate of Decedent, was deposed in the State Court Case on December 17, 2008; Viad was not present at the deposition. Mr. Ross served aboard the USS Moore from June 1965 to May 1967, serving with Decedent for a total of nine months. *See* Exhibit M, deposition transcript of Robert E. Ross, taken December 17, 2008, 23:22-24:1, 142:13-16. Mr. Ross' testimony is devoid of any mention of the evaporator aboard the USS Moore. Further, he had no knowledge of the maintenance history of the USS Moore and had no way of knowing whether any of the gaskets or packing was original to any equipment by the time he boarded her in 1965. *Id.* at 139:23-142:2.

### d.    Larry Clevenger

The deposition of Larry Clevenger ("Mr. Clevenger"), another shipmate of the Decedent, was taken in the State Court Case on December 9, 2008; Viad was not present at the deposition. Mr. Clevenger served aboard the USS Moore from 1958 to 1961, and was in charge of the evaporator gang. *See* Exhibit N, deposition transcript of Larry Clevenger, taken December 9, 2008, 22:12-18, 90:9-16 and 132:13-18. Although Decedent supervised the engine room during Mr. Clevenger's service, Mr. Clevenger could not recall any hands-on work Decedent did to the evaporator during this time, testifying only regarding work done by others on peripheral pumps and steam lines not manufactured by GRC. *See generally Id.*, 40:14-15, 73:5-21 and 191:1-193.

### 4.    Ship History

### a.    USS Franklin D. Roosevelt (CVB-42)

The USS Franklin D. Roosevelt (CVB-42) was laid down on December 1, 1943 and was commissioned on October 27, 1945. Decedent served aboard her between 1948 and 1954.

Plaintiff has offered no evidence that Decedent worked with or around a GRC product aboard this vessel.

### b.    USS Oriskany (CV-34)

The USS Oriskany (CV-34) was laid down on May 1, 1944 and was commissioned on September 25, 1950.  Decedent served aboard her between 1954 and 1956.  Plaintiff has offered no evidence that Decedent worked with or around a GRC product aboard this vessel.

### c.    USS Samuel N. Moore (DD-747)

The USS Samuel N. Moore (DD-747) was laid down on September 30, 1943 and commissioned June 24, 1944. Decedent served aboard her from 1959 to 1966, approximately fifteen years later.

### d.    USS Caliente (AO-53)

The USS Caliente (AO-53) was commissioned on October 22, 1943.  Decedent served aboard her between 1969 and 1970.  Plaintiff has offered no evidence that Decedent worked with or around a GRC product aboard this vessel.

### B.    Factual Background Regarding Corporate History/Time Of GRC And Viad – Lack Of Successor Relationship.

### 1.    GRC Background/Dissolution

GRC was incorporated in Delaware, and by 1962, it was a subsidiary company of Hamilton-Thomas.  *See* Moody's Report for 1962, Exhibit P.  On January 30, 1962, Baldwin-Lima-Hamilton, a Pennsylvania corporation (referred to as "BLH-PA") bought 93.4% of the stock of Hamilton-Thomas for cash.  *Id.*

In April 1962, GRC's shareholders voted to dissolve the company in accordance with Delaware corporate laws.  *See* Articles of Dissolution, attached as Exhibit Q.  During a three-day auction in October 1962, GRC's plant and all of its manufacturing equipment were sold to more than 500 manufacturers, including GRC competitors.  *See* Towpath to Towpath Article, attached as Exhibit R.  GRC was formally dissolved pursuant to Delaware law on December 18, 1963.  *See* Articles of Dissolution, Exhibit Q.  As more fully discussed below, under Pennsylvania,

Delaware, and California law,[3] GRC is defunct as of this date in 1963, and there are no successors to it.

In 1965, Amour and Co., a Delaware corporation, merged with BLH-PA (the entity which had previously purchased a majority interest in the stock of GRC's former parent corporation) in a statutory merger. *See* Merger Agreement, attached as Exhibit S; *see also*, Armour Tax Return, attached as Exhibit T. BLH-PA ceased to exist and the surviving company was known as Armour and Co. (referred to as Armour-DE).[4] *Id.*

Very importantly, as part of the same 1965 merger agreement by which Armour-DE acquired all the assets and liabilities of BLH-PA, said assets and liabilities were transferred to a newly-created and wholly-owned subsidiary named Baldwin-Lima-Hamilton, which was incorporated in Delaware (referred to as "BLH-DE"). As discussed below, the simultaneous transfer of all BLH-PA assets and liabilities to BLH-DE is evidenced by the 1965 Tax Return for Armour-DE and documentation from the United States Internal Revenue Service (IRS).

**2.      1965 Tax Return for Armour-DE.**

Armour-DE's tax return states:

> On July 2, 1965, all the assets of Baldwin-Lima-Hamilton Corporation (Pennsylvania) were transferred to Armour and Company (Delaware) in exchange for common and preferred stock of Armour and Company (Delaware) and assumption by Armour and Company (Delaware) of all the liabilities of Baldwin-Lima-Hamilton Corporation (Pennsylvania), and all such assets and liabilities were immediately transferred to Baldwin-Lima-Hamilton (Delaware) in a tax-free reorganization pursuant to Sections 368(a)(1)(A) and 368(a)(2)(C) of the Internal Revenue Code of 1954.

---

[3] This motion will be argued in Pennsylvania, involves Pennsylvania and Delaware corporations, and the case was filed in California. Therefore, this motion references each states' law on the issue, which is consistent on the vital issues.

[4] For purposes of this motion, Viad will not contest that it is a corporate successor to Armour-DE.

A copy of relevant excerpts from the 1965 tax return and related documentation is attached as to the Affidavit of Deborah DePaoli, attached as Exhibit U, *see* pages marked "448-449" in top right corner. The tax return described the effect of these transfers as follows:

> To effectuate this plan, BLH will be merged with and into Armour pursuant to the laws of Pennsylvania and Delaware, with Armour as the surviving corporation. BLH's separate existence will cease and Armour will acquire all of BLH's assets and assume all of BLH's liabilities. Each share of BLH's common stock will be exchanged for one-sixth share of Armour common stock and thirteen-hundredths of a share of a new issue of Armour $100 per value $4.75 preferred stock ("Armour preferred").
>
> ...
>
> Immediately following the merger, all of the BLH assets and liabilities were transferred to Armour and Company's wholly owned subsidiary Baldwin-Lima-Hamilton Corporation (Delaware) in exchange for 4,165,250 shares of BLH (Delaware) common stock.

*Id.*

The IRS confirmed in its contemporaneous ruling that the assets and liabilities of BLH-PA would not impact the assets, liabilities or income of Armour, as the assets and liabilities of BLH-PA were "passing through" Armour and going directly to BHL-DE. *See* Tax Return and related correspondence from the IRS (pages marked with "465-470" in the top right corner), attached as Exhibit T. The balance sheets of BLH-PA before the merger, and the balance sheet of BLH-DE immediately after the transaction, are virtually identical. *See* Exhibit V, deposition of Peter Novak dated October 16, 2007.[5]

In 1972, BLH-DE changed its name to BLH, Inc. *See* Amendment, attached hereto as Exhibit W. BLH, Inc. was formally dissolved on November 30, 1975. *See* Certified Certificate of Dissolution filed with the Delaware Secretary of State, attached hereto as Exhibit X. Thus, assuming for the sake of argument that BLH-PA somehow succeeded to any liabilities of GRC,

---

[5] The attached deposition transcript is from the case entitled *Andregg v. AW Chesterton, et al.*, docket no. 274208, Superior Court of the State of California, County of San Francisco.

which Viad expressly denies, the dissolution of that company, now named BLH, Inc. effectively cut off any alleged GRC liabilities.

## II.    CHOICE OF LAW

The instant case was removed from the Los Angeles County Superior Court to Federal Court pursuant to federal question jurisdiction.  This Court must determine whether state law or federal law governs.  The general rule is that "[E]xcept in matters governed by the Federal Constitution or by actions of Congress, the law to be applied in any case is law of the state." *Erie Railroad Co. v. Tompkins* (1938) 304 U.S. 64, 78.

However, there is an exception to this rule when an issue of maritime jurisdiction arises. According to the court in *East River Steamship Corp., v. Transamerica Delaval, Inc.* (1986) 106 S.Ct. 2295, 863-864, maritime jurisdiction arises where an injury occurs on navigable waters. While the instant case was originally filed in California state court, the alleged exposure to asbestos occurred while Decedent was serving in the Navy "on the high seas or navigable waters." *East River Steamship Corp., supra*, 476 U.S. 858 at 864.  Therefore, a choice of law question arises as to whether California law or maritime law controls.

Under California law, if there is no material difference in applicable rules of law, then "there is no choice-of-law problem and the court may proceed to apply California law." *Frontier Oil Corporation v. RLI Insurance Company* (2007) 153 Cal.App.4[th] 1436, 1465.  With respect to proximate cause in asbestos-exposure cases, California law and maritime law are essentially identical.  Under maritime law, the "substantial contributing factor" test is utilized in product liability cases.  *Singleton Stone v. Amquip Corp.,* Civ. No. 98-cv-4691, 1000 WL 1448817 at 3 (E.D. Pa. sep. 29, 2000).  Similarly, California has "definitely" adopted the "substantial factor" test of the Restatement Second of Torts for cause-in-fact determinations.  *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4[th] 953, 968.  As there is no material difference in the applicable rules of law, this Court should therefore apply the substantive law of California in determination of the instant motion.

### III.    LEGAL ARGUMENT

The judgment sought by a motion for summary judgment "should be rendered if the pleadings, the discovery, and the disclosure materials on file, and any affidavits show that there is *no genuine issue as to any material fact* and that the movant is entitled to judgment as a matter of law." Fed. Civ. Proc. Rule 56(c)(2) (emphasis added).   Summary judgment is properly granted to a defendant who shows either that plaintiff cannot establish one or more essential elements of his cause of action or that there is an affirmative defense that bars recovery. Fed. Civ. Proc. Rule 56; *Celotex Corp. v. Catrett* (1986) 477 US 317, 325.

A moving defendant "is not required to conclusively negate an element of plaintiff's cause of action, but rather need only put forth evidence showing plaintiff does not possess, and cannot reasonably obtain, evidence necessary to establish the elements of the cause of action." *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849; *see also Celotex Corp. v. Catrett, supra,* 477 US at 323.  Factually devoid discovery responses, such as boilerplate responses to comprehensive discovery requests, are precisely the type of evidence that shifts the burden to plaintiff on a motion for summary judgment.  Once the burden shifts, "plaintiff must set forth facts sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra,* 477 US at 322; *see also, Krantz v. BT Visual Images, LLC* (2001) 89 Cal.App.4th 164, 170-71; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573; *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 99-100.

### A.    Summary Judgment Is Appropriate Because Plaintiff Cannot Establish That Decedent Breathed Respirable Asbestos Fibers Released From A GRC Product.

Plaintiff cannot establish the essential element of causation.   To avoid summary judgment, plaintiff must demonstrate that respirable asbestos fibers released from a GRC product caused Decedent's injuries. *Rutherford v. Owens-Illinois* (1997) 16 Cal.4th 953, 958; *Cadlo v.*

11

*Owens-Illinois* (2004) 124 Cal.App.4th 513.  The mere possibility of exposure does not create a triable issue of fact. *Andrews v. Foster Wheeler, LLC* (2006) 138 Cal.App.4th 96, 108.

Proximate cause is an element of both negligence and strict product liability.  *Powell v. Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 363.  As a rule, the imposition of liability in tort depends upon a showing by plaintiff that his injuries resulted from an act of defendant or an instrumentality under defendant's control.  *Ibid.*  To establish the essential element of causation, plaintiff must do more than show that a GRC evaporator was present on Decedent's ships.  *Hunter v. Pacific Mechanical Corp.* (199) 37 Cal.App.4th 1282, 1289; *Dumin v Owens-Corning Fiberglass Corp.* (1944) 28 Cal.App.4th 650, 658.  At a minimum, plaintiff must show a "threshold exposure" to asbestos from a product manufactured, sold, or supplied by GRC that was a "substantial factor in contributing to [his] injury." *Id.* at 982-83.[6]

Not all exposures are sufficient to meet the "substantial factor" test.  In determining whether a particular exposure contributed significantly enough, "length, frequency, proximity and intensity of exposure" should be considered, along with "the peculiar properties of the individual product."  *Rutherford, supra,* 16 Cal.4th at 977.  A force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor.  *Id.*, at 969; *see also, Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79; *Lineaweaver v. Plant Insulation Co., supra,* 31 Cal.App.4th at 1416-17 [Many factors are relevant in assessing the medical probability that an exposure contributed to plaintiff's asbestos disease.  Frequency of exposure, regularity of exposure, and proximity of the asbestos product to plaintiff are certainly relevant, in addition to the type of asbestos product to which plaintiff was exposed, the type of injury suffered by plaintiff, and other possible sources of plaintiff's injury].

---

[6] *See also, Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1415-1416 [a plaintiff must demonstrate exposure to a defendant's product and biological processes from the exposure which results in disease; the plaintiff bears the burden of proving exposure to a particular defendant's product]; *Dumin, supra,* 28 Cal.App.4th 650, 657-58; and *McGonnell v. Kaiser Gypsum* (2002) 98 Cal.App.4th 1098, 1103 [a threshold issue in asbestos litigation is exposure to the defendant's product ... if there has been no exposure, there is no causation].

### 1.    Plaintiff Cannot Meet Either Prong Of The *Rutherford* Test.

*Rutherford* and its progeny require plaintiff to prove – by non-speculative evidence – that Decedent worked with or in the immediate vicinity of an asbestos-containing GRC product. Plaintiff must demonstrate that Decedent worked with or around a GRC product that contained asbestos and released respirable asbestos fibers.

At the very least, plaintiff must possess some specific evidence that: (i) the evaporator the Decedent worked on while aboard the USS Moore contained an original asbestos-containing gasket or component manufactured or supplied by GRC; (ii) Decedent's work on the evaporator somehow disturbed this original component, liberating respirable asbestos fibers; and (iii) Decedent breathed these fibers. *Dumin, supra,* 28 Cal.App.4[th] at 654.  Plaintiff cannot make the necessary showing.  Decedent testified that he did not perform any repair or maintenance to any evaporator prior to his service aboard the USS. Moore.  *See* Exhibit I, discovery deposition of Robert T. Schott, taken November 3, 2008, 1499:19-23.  The USS Moore was laid down on September 30, 1943 and commissioned on June 24, 1944.  Decedent boarded this vessel in 1959, approximately fifteen year after she was commissioned.   By 1959, the USS Moore had undergone several overhauls, including but not limited to overhauls in 1945-46 and 1947-48, and one just prior to the date Decedent boarded her.  *See* Exhibit O, Report of Material Inspection of the U.S.S. Samuel N. Moore, dated November 10, 1947; s*ee also* Exhibit L, deposition transcript of Richard Withers, taken March 12, 2010, at 131:24-132:3.   During these overhauls, the evaporator would have been opened up, the tubes would have been inspected, and the gaskets and packing would have been replaced.  *Id.,* 56:15-58:5, 131:22-132:3.  Therefore, by the time Decedent boarded the USS Moore, the evaporator did not contain any original asbestos-containing materials supplied by GRC (assuming, arguendo, that any such materials were even on the evaporator in the first place).  In the absence of any asbestos-containing gaskets, packing, or insulation supplied by GRC, plaintiff cannot meet either prong of the Rutherford test.

*Rutherford, supra*, 16 Cal.4[th] at 969; *McGonnell, supra,* 98 Cal.App.4[th] at 1105.   There is no evidence that GRC provided any replacement gaskets or packing.

Moreover, based on the testimony of Decedent and Mr. Withers, Decedent only worked on the evaporator on one occasion, over the course of one weekend, during which "the whole crew" removed the tube nest from the evaporator for repairs aboard another ship, and replaced the tube nest after the repairs were complete.  *See* Exhibit L, deposition transcript of Richard Withers, taken March 12, 2010, 49:16-50:24, 51:16-25; 59:2-14.   There was only one gasket associated with this work, which given the number of overhauls the ship had undergone would not have been original to the evaporator.

The proffered testimony of Decedent and the three product identification witnesses fail to support plaintiff's claims that Decedent breathed respirable asbestos fibers emitted by a GRC product that was originally supplied by GRC.  Summary Judgment should therefore be granted.

**B.**      **Summary Judgment Is Appropriate Because Plaintiff Cannot Establish That GRC Placed An Asbestos-Containing Product Into The Stream Of Commerce.**

To the extent plaintiff attempts to hold Viad responsible for products manufactured or supplied by third parties, such as insulation the Navy added to a GRC evaporator or gaskets the Navy placed in the evaporator years after it was sold, plaintiff's theory of liability is not supported by the law.

California precludes liability for hazards or defects associated with products that a defendant did not place into the stream of commerce.  *Taylor v. Elliott Turbomachinery Co.* (2009) 171 Cal.App.4[th] 564, 564.  Because plaintiff has not, and cannot, prove that GRC placed an injury-producing, asbestos-containing product into the stream of commerce, summary judgment in favor of Viad is appropriate.

///

///

///

14

1.     **Summary Judgment Is Proper Because GRC Was Not In The Chain Of Distribution Of Products Manufactured And Supplied By Others.**

California recently refined its law relating to what a plaintiff must prove in order to prevail in an asbestos exposure action. California courts have repeatedly held that manufacturers are not insurers of their products and are liable in tort only when defects in *their* products caused injury. *Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 568, fn. 5. Expanding on this concept, the *Taylor* court held that a manufacturer cannot be liable for the dangers inherent in asbestos-containing materials if a plaintiff fails to prove that the manufacturer was part of the "chain of distribution" of the injury-producing product. *Taylor, supra,* 171 Cal.App.4th at 592-593.

In *Taylor*, plaintiffs alleged that Mr. Taylor was exposed to asbestos-containing products while working in the U.S. Navy during the 1960s. *Id.* at 571-572. The asbestos-containing products to which Mr. Taylor was exposed (thermal insulation and replacement gaskets and packing) were used on or near defendants' equipment, but were manufactured and supplied by third parties. *Id.*

Plaintiffs argued that the use of third parties' products was foreseeable to defendant equipment manufacturers. Therefore, the equipment manufacturers should be held liable for the dangerous propensities inherent in the third parties' gaskets, packing, and insulation. *Taylor, supra* 171 Cal.App.4th at 572. The equipment defendants argued that liability should be limited to those in the chain of distribution of the products that contained asbestos. *Id.* In affirming the trial court's grant of defendants' summary judgment, the *Taylor* court emphasized that liability would attach only upon evidence that a defendant placed the injury-producing product in the stream of commerce. *Id.* at 576.

> The evolution of this notion reflects a bright-line legal distinction tied to the *injury-producing product* in the stream of commerce. Other manufacturers cannot be expected to determine the relative dangers of various products they do not produce or sell and certainly do not have a chance to inspect or evaluate. This legal distinction acknowledges that over-extending the level of responsibility could potentially lead to commercial as well as legal nightmares in product distribution.

*Taylor, supra* 171 Cal.App.4[th] at 576, emphasis in original.

The *Taylor* court set forth the specific evidentiary showing a plaintiff must make to prove a defendant placed the injury-producing product in the stream of commerce:

> It is the defendant's participatory connection, for his personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product... with the manufacturer or other entities involved in the manufacturing-market system [] which calls for imposition of strict liability."   This nexus of liability is present ... if the plaintiff's evidence establishes "(1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process.

*Id.* at p. 725, internal citations omitted.  It is plaintiff's burden to produce evidence of the three factors linking the injury-producing product with a particular entity in the stream of commerce. *Taylor, supra* 171 Cal.App.4[th] at 576 [citing, *Bay Summit Community Assn. v. Shell Oil Co.* (1996) 51 Cal.App.4[th] 762, 776].  *See also, Springmeyer v. Ford Motor Co.* (1998) 60 Cal.App.4[th] 1541, 1554 (to impose liability would require product suppliers "to retain experts in a huge variety of areas in order to determine the possible risks associated with each potential use.").  Absent this showing, Viad cannot be held liable.

If GRC did not participate in the chain of distribution for the alleged injury-causing product, Viad cannot be held liable under any theory of liability.  Here, there is no evidence that Decedent was exposed to *any* original asbestos-containing GRC product.  Thus, Viad's motion for summary judgment should be granted.

## 2.      This Case Is Factually Analogous To *Taylor.*

*Taylor* governs this case.  Decedent served on the USS Moore approximately fifteen years after she was laid down.  There is no evidence that any asbestos-containing products that Decedent may have encountered on that ship were supplied by GRC.  To the contrary, the USS Moore underwent several major overhauls between the time she was laid down in 1943 and the

time Decedent boarded her in 1959.  *See* Exhibit O, report of Material Inspection of the USS Samuel N. Moore, dated November 10, 1947.  Furthermore, no testimony was offered – by either Decedent or plaintiff's product identification witnesses – as to the presence of *any* original component part on any GRC equipment.

GRC is not legally responsible for any insulation the Navy may have placed on the evaporator, or any asbestos-containing gaskets it may have used.  Because GRC took no part in the "marketing enterprise or distribution" of the alleged injury-producing gaskets or insulation, Viad is entitled to summary judgment.  *Taylor, supra*, 171 Cal.App.4th at 575-579; *see also, Peterson v. Superior Court* (1995) 10 Cal.4th 1185.

## IV.    VIAD IS NOT THE SUCCESSOR TO GRC

### A.    Applicable Law – Corporate Successor Liability.

As noted above, the corporate successor issues involve Delaware and Pennsylvania corporations.  Analysis of successor liability begins with BLH-PA's purchase of a majority interest in the stock of Hamilton-Thomas (the corporate parent of GRC) in 1962.  Under Delaware and Pennsylvania law, as well as California law, a corporation purchasing the assets of another corporation does not, by reason of such purchase, become liable for the debts and liabilities of the selling corporation.  *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308 (3rd Cir. 1985), cert denied, 474 U.S. 980 (1985); Elmer v. Tenneco Resins, Inc., 698 F.Supp. 535, 540 (D. Del. 1988); *See Schwartz v. McGraw-Edison Co.* (1971) 14 Cal.App.3d 767, 780. *See also Witkin, Summary of California Law* (9th Edition) Torts section 1273.

There are exceptions to this rule of non-liability.  In Pennsylvania and Delaware, successor liability can be imposed after a mere asset purchase where: (1) the purchaser expressly or impliedly agrees to assume the liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the selling company; or (4) the transfer of assets is for the fraudulent purpose of escaping liability.  *Philadelphia Electric Company v. Hercules, Inc., 762 F.2d 303 at 308-309; Fehl v. S.W.C. Co.,* 433 F.Supp. 939, 945 (D. Del. 1997).  California

law also recognizes the exceptions. *See Ortiz v. South Bend Lathe* (1975) 46 Cal.App.3d 842, 846. As a preliminary note, it is important to recognize that plaintiff has not and cannot claim that BLH-PA ever expressly or impliedly agreed to assume the liabilities of GRC. Thus, the first exception of the general rule of non-liability is not even at issue here.

**B.     A GRC/BLH-PA De Facto Merger Did Not Occur.**

Lacking any support for the first exception to the general rule, Viad anticipates that plaintiff will suggest a *de facto* merger, sometimes referred to as a statutory merger, took place whereby BLH-PA succeeded to the liabilities of GRC. The record shows that no such merger ever occurred. Under both Pennsylvania and Delaware law, a *de facto* merger can take place where a seller corporation continues its business existence as an absorbed part of the buyer and the seller's shareholders or officers continue their interest in the business after the dissolution of the selling corporate entity. *Continental Ins. Co. v. Schneider, Inc.,* 810 A.2d 127, 135 (Pa. Sup. Ct. 2002); *Drug, Inc. v. Hunt,* 35 Del. 399, 168 A. 87, 96 (Del. 1933).

The transfer of stock, continuity of management, personnel, physical location, and shareholders, and the assumption of the selling corporation's liabilities are all key elements in finding a *de facto* merger. *Philadelphia Elec. Co.* 762 F.2d at 310. While under Pennsylvania law, the *de facto* merger exception focuses on whether the purchaser is merely restructured or reorganized form of the seller; the most critical element of the Pennsylvania *de facto* merger analysis is the continuity of the stock ownership. *Berg Chilling Sys., Inc. v. Hull Corp.,* 435 F.3d 455, 468-69 (3d Cir. 2006); *Cont'l Ins. Co. v. Schneider, Inc.* 810 A.2d 127, 134-36 (2002), *aff'd,* 873 A.2d 1286 (Pa. 2005). *De facto* merger fails as a matter of law if there is no stock transfer between the predecessor and the alleged successor. *Forrest v. Beliott Corp.,* 278 F. Supp. 2d 471, 477 (E.D. Pa. 2003), *rev'd on other grounds,* 424 F.3d 344 (3d Cir. 2005).

In this case, BHL-PA was not a restructured or reorganized form of GRC. GRC was dissolved in the ordinary course of business and ceased to exist.[7] BLH-PA paid cash for 93.4%

---

[7] By statute, Delaware, the state in which GRC was incorporated and dissolved, protects shareholders from liability on claims filed more than three years after the date of dissolution of the corporation if certain procedures were

of Hamilton Thomas stock, the corporation that owned GRC. *See* Moody's Report for 1962, attached as Exhibit P. There was no exchange of stock and no continuity of stock ownership. There was no continuity of physical location, management or personnel. There is no evidence that BLH-PA took on GRC liabilities.

On April 18, 1962, GRC's board of Directors met to approve and ratify a complete liquidation and dissolution plan. The stockholders voted unanimously in favor of the board's recommendations. GRC sold $5 million in assets before it dissolved. GRC's plant and equipment were sold at auction to more than 500 of its competitors. Eight hundred employees lost their jobs. The company formally dissolved in December 1963 pursuant to Delaware law. *See* Articles of Dissolution, attached as Exhibit Q.

A Washington appellate court recently considered this exact issue and found Viad was not the successor in interest to GRC using the same factual analysis set forth above. *Payne v. Viad Corporation,* 190 P.3d 102, 108 (Wash. Ct. App. 2008); *see* Exhibit Y. As the *Payne* court agreed, contrary to Plaintiff's assertions, there is no evidence of a *de facto* or statutory merger between BLH-PA and GRC under the law, and therefore, Viad cannot be successor to the liabilities of GRC.

### C. The 1965 Armour DE/BLH-PA Statutory Merger Transformed Liabilities To BLH-DE, Cutting Off Any Potential Liability To Viad.

Should the court determine that issues of fact exist as to whether or not a *de facto* merger took place between BLH-PA and GRC, Viad is still entitled to summary judgment because Viad never succeeded to either GRC's or BLH-PA's liabilities. Rather, all of BLH-PA assets and liabilities were transferred to BLH-DE in a tax-free reorganization in 1965, and BLH-DE was later dissolved.

---

followed in the dissolution. 8 Del. §§ 282, 281, 282. By law, a corporation must give public notice of the dissolution and provide a date by which claims against the corporation must be asserted, after which claims are barred. GRC's dissolution, some forty-five years ago under Delaware law, is a critical reason for not imposing GRC liabilities on BLH-PA.

As noted above, Armour-DE merged with BLH-PA in 1965.  As an integral part of that merger, Armour formed BLH-DE, which assumed all BLH-PA liabilities.  A condition of the 1965 merger was receipt by Armour-DE of a ruling by the IRS Commissioner stating that Armour-DE would not recognize a gain or loss by virtue of the merger.  Armour provided a statement to the IRS explaining how the BLH-PA assets and liabilities were to transfer immediately to BLH-DE.  The IRS ruled that the reorganization qualified for tax-free treatment.  The ruling was attached to the 1965 Armour-DE tax return, along with Armour-DE's statement to the IRS.  *See* Exhibit T at pages marked "448-49" in the upper right corner.

In addressing the issue of successor liability, the deposition testimony of Peter Novak is instructive.  Mr. Novak was in-house counsel at Viad and its predecessor corporate entities, as well as BLH-DE's former general counsel.  Thus, he has the predicate knowledge and foundation by which to establish the undisputed facts pertaining to Viad's corporate timeline.  Mr. Novak has testified in a number of asbestos cases wherein the claimants sought to impose successor liability upon Viad for GRC products.  His deposition testimony from a prior California case is particularly on point.  In that case, he testified that in 1965 all assets and liabilities of BLH-PA were merged into Armour and then transferred to BLH-DE via a written assignment.  *See* Novak Deposition at pp. 62-66, attached as Exhibit V.  Mr. Novak recalled seeing the assignment on numerous occasions, and described its physical characteristics and the purpose of the document.  Viad has been unable to locate the document, which is hardly surprising given that it was prepared some 44 years ago, so the sworn testimony of Mr. Novak remains the best evidence of the contents of that document.

Consequently, Armour-DE did not succeed to BLH-PA's assets or liabilities, including any liabilities associated with GRC products, should those liabilities have somehow survived the complete dissolution of the GRC years before.  Rather, the assets and liabilities went to BLH-DE, an entity that is not a corporate predecessor to Viad.  Accordingly, Viad is entitled to summary judgment as a matter of law, as it is not the corporate successor to GRC.

**WHEREFORE**, Defendant Viad respectfully requests this Court enter Summary Judgment in its favor and grant such other relief as the Court deems just and proper.

Dated: August 13, 2010

**VIAD CORP**
By its Attorneys

Peter B. Langbord
plangbord@foleymansfield.com
**FOLEY & MANSFIELD, PLLP**
300 South Grand Avenue, Suite 2800
Los Angeles, California 90071
(213) 283-2100
(213) 283-2101 (fax)

21

Peter B. Langbord, Esq.
**FOLEY & MANSFIELD, PLLP**
300 South Grand Avenue, Suite 2800
Los Angeles, California 90071
Telephone: (213) 283-2100
**Attorneys for Defendant, Viad Corp**

| | |
|---|---|
| **IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)** ) ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA |
| **THERESA M. SCHOTT, Individually and as Personal Representative for the Estate of ROBERT THOMAS SCHOTT** ) ) ) ) | |
| **Plaintiffs,** ) ) | **EDPA** Case No. 2:09-CV-63308-ER |
| **vs.** ) ) ) | Transferor Court: United States District Court for the Central District of California |
| **CLA-VAL CO., et al.,** ) ) ) | |
| **Defendants.** ) ) ) | **DECLARATION OF PETER B. LANGBORD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, Peter B. Langbord, declare as follows:

1.      I am an attorney at law duly licensed to practice law before all of the Courts in the State of California and the United States District Court, Central District of California, and am a partner in the law firm of Foley & Mansfield, PLLP, attorneys of record for Defendant Viad Corp ("Viad"). I am one of the attorneys responsible for defending this matter on behalf of Viad Corp and have personal knowledge of the following matters and can competently testify thereto.

2.      Attached hereto as Exhibits "A", "B", and "C" are true and correct copies of plaintiffs' responses to special interrogatories, request for production of documents and request for admissions that my office propounded on Viad's behalf.

3.      Attached hereto as Exhibit "D" is a true and correct copy of plaintiffs' Death Certificate.

4.      Attached hereto as Exhibit "E" is a true and correct copy of the deposition of Robert Schott, taken on October 9, 2008.

5.      Attached hereto as Exhibit "F" is a true and  correct copy of the deposition of

Robert Schott, taken on October 16, 2008.

6.     Attached hereto as Exhibit "G" is a true and correct copy of the deposition transcript of Robert Schott, taken on August 29, 2010.

7.     Attached hereto as Exhibit "H" is a true and correct copy of the deposition of Robert Schott, taken on October 17, 2008.

8.     Attached hereto as Exhibit "I" is a true and correct copy of the deposition of Robert Schott, taken on November 3, 2008.

9.     Attached hereto as Exhibit "J" is a true and correct copy of the deposition of Robert Schott, taken on October 22, 2008.

10.    Attached hereto as Exhibit "K" is a true and correct copy of the deposition of Robert Schott, taken on October 27, 2008.

11.    Attached hereto as Exhibit "L" is a true and correct copy of the deposition of Richard Withers, taken on March 12, 2010.

12.    Attached hereto as Exhibit "M" is a true and correct copy of the deposition of Robert E. Ross, taken on December 17, 2008.

13.    Attached hereto as Exhibit "N" is a true and correct copy of the deposition of Larry Clevenger, taken on December 9 , 2008.

14.    Attached hereto as Exhibit "O" is a true and correct copy of the Report of Material Inspection of the U.S.S. Samuel N. Moore, dated November 10, 1947.

15.    Attached hereto as Exhibit "P" is a true and correct copy Moody's Report for 1962.

16.    Attached hereto as Exhibit "Q" is a true and correct copy of the Articles of Dissolution.

17.    Attached hereto as Exhibit "R" is a true and correct copy of the Towpath to Towpath Article.

18.    Attached hereto as Exhibit "S" is a true and correct copy of the Merger Agreement.

19.    Attached hereto as Exhibit "T" is a true and correct copy of the Tax Return.

20.     Attached hereto as Exhibit "U" is a true and correct copy of the Affidavit of Deborah DePaoli.

21.     Attached hereto as Exhibit "V" is a true and correct copy of the deposition of Peter Novak taken October 16, 2007.

22.     Attached hereto as Exhibit "W" is a true and correct copy of the Amendment

23.     Attached hereto as Exhibit "X" is a true and correct copy of the Certified Certificate of Dissolution.

24.     Attached hereto as Exhibit "Y" is a true and correct copy of *Payne v. Viad Corporation,* 190 P.3d 102, 108 (Wash. Ct. App. 2008).


I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed this 13th day of August, 2010 at Los Angeles, CA.


_____
Peter B. Langbord

# PROOF OF SERVICE

[CCP, 1013A(3) CRC Rule 2006(d) - Revised 3/1/92]

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 300 S. Grand Ave., Suite 2800, Los Angeles, California 90071.

On **August 16, 2010**, I served the foregoing document described as: **DEFENDANT VIAD CORP'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT & DECLARATION OF PETER B. LANGBORD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Evan Delgado, Esq.
**SIMON, EDDINS & GREENSTONE, LLP**
301 E. Ocean Blvd., Suite 1950
Long Beach, CA 90802
Tel: (562) 590-3400 / Fax: (562) 590-3412
*Attorneys for Plaintiffs*

☐ *(BY MAIL)* I caused such envelope with postage thereon fully prepaid to be placed in the U.S. mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business.

☒ *(BY COURT'S CM/ECF SYSTEM)* Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF systems, which sent notification of that filing to the persona listed above.

Executed on **August 16, 2010**, Los Angeles, California.

☒ **FEDERAL]** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
Ruben Jauregui

1